IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHERYLE RABON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10CV596 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Cheryle Rabon ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on November 26, 2004, alleging a disability onset date of July 23, 2004. (Tr. at 58-67.)[2] She subsequently amended

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #7].

her alleged onset date to December 3, 2004. (Tr. at 917-18) Plaintiff's application was denied initially (Tr. at 37) and upon reconsideration (Tr. at 34). Thereafter, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). (See Tr. at 43.) Present at the hearing, held on March 17, 2008, were Plaintiff, her attorney, and a vocational expert ("VE"). (Tr. at 11.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act from her alleged onset date until February 11, 2007, but that she became disabled on February 11, 2007, when she reached fifty years of age. (Tr. at 22-23.) On June 10, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 2-6.)

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since December 3, 2004, her amended alleged onset date (20 CFR 404.1520(b) and 20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic pain syndrome, fibromyalgia, and depression (20 CFR 404.1520(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), which involves lifting no more than ten pounds at a time and occasionally lifting articles like docket files, ledgers, and small tools.

2

> She can only occasionally climb, balance, or kneel and she experiences mild problems with concentration and memory.

(Tr. at 13, 15-16.)

Considering Plaintiff's education, the above findings regarding residual functional capacity ("RFC"), and her age at the time of her alleged onset, the ALJ ultimately determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 22.) He therefore found that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through February 11, 2007. (Tr. at 23.) However, beginning on February 11, 2007, when Plaintiff's age category changed to "closely approaching advanced age," the Medical-Vocational Guidelines directed a finding that there were not a significant number of jobs in the national economy that Plaintiff could perform, and she became disabled as of that date. (Tr. at 22-23.)

## II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

("RFC")." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

from the following severe impairments: chronic pain syndrome, fibromyalgia, and depression. (Tr. at 13.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Therefore, Plaintiff's RFC was assessed, and the ALJ determined that Plaintiff could perform only sedentary work with further restrictions. Based on this determination, the ALJ determined under step four of the analysis that Plaintiff could not return to her past relevant work, but he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled from her alleged onset date until February 11, 2007. (Tr. at 21-22.)

However, on February 11, 2007, Plaintiff attained 50 years of age, and her age category under the Act changed from a "younger individual age 45-49" to an "individual closely approaching advanced age." (Tr. at 21.) Beginning on that date, Medical-Vocational Rule 201.14 directed a finding of disabled. (Tr. at 22-23.) In accordance with these findings, the ALJ ultimately issued a partially favorable decision, denying Plaintiff benefits from December 3, 2004, her alleged onset date, until February 11, 2007, and awarding Plaintiff benefits for a period of disability commencing on February 11, 2007. (Tr. at 23.) Plaintiff now challenges the ALJ's denial of benefits for the time period preceding her fiftieth birthday. She argues that her impairments met or medically equaled listed impairments at step three and that substantial evidence fails to support the ALJ's determination otherwise. In particular, Plaintiff claims that the ALJ failed to properly evaluate her depression under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(C) ("Listing 12.04(C)") and her chronic pain syndrome and fibromyalgia under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.01 ("Listing 1.01"). (Pl.'s Br. at 4-6.)

7

A.  Listing 12.04(C)

Plaintiff first argues that the relevant medical evidence supports a finding that her depression meets or medically equals Listing 12.04(C). Listing 12.04 encompasses affective disorders, including depressive, manic, and bipolar syndromes, and may be met in one of two ways. Most commonly, a claimant first must manifest certain paragraph A criteria, i.e., specific symptoms set out in the listing itself. These, in turn, must result in at least two of the following paragraph B criteria:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(B). In other words, a claimant must meet both paragraphs A and B. Alternatively, a claimant may prove disability via paragraph C if her symptoms meet the following heightened severity standards set out in that listing:

C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medical or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(C).

Here, Plaintiff claims to meet all of the requirements of paragraph C and cites three psychological evaluations as supporting evidence. (Pl.'s Br. at 4.) However, Plaintiff never relates which of the three subsections of Listing 12.04(C) she claims to meet and, while she sets out the findings from her psychological evaluations in some detail, she never ties these findings in any way to the specific Listing requirements. (Pl.'s Br. at 4-6.) Moreover, the evaluations themselves fail to suggest anything close to the level of severity required by Listing 12.04(C). Martha Anne Rich, Ph.D., a Licensed Clinical Psychologist who examined Plaintiff on March 17, 2004, described Plaintiff's depression as "mild," and opined that she "would require six to eight individual [weekly therapy] sessions" to adequately address her depressive symptoms. (Tr. at 468.) Six months later, on September 14, 2004, another psychologist, Brian O'Malley, Ph.D., evaluated Plaintiff. At that time, Plaintiff continued to report "persistent difficulties with depression" which limited her activities, but noted that her condition had "improved with medication and psychotherapy." (Tr. at 475-76.) Dr. O'Malley recommended a "comprehensive rehabilitation program" through The Rehab Center to provide Plaintiff with "symptomatic relief of her pain, increase her level of function, improve her emotional status and assist her with return to gainful employment." (Tr. at 476.) Further records indicate that Plaintiff completed this program and "made improvements in strength, mobility and mood." (Tr. at 696.)

The third and final evaluation cited by Plaintiff adds little to her argument. Kenneth Derrick, M.D. evaluated Plaintiff on February 23, 2005 on behalf of Disability Determination Services and noted, like the previous examiners, that medications had lessened Plaintiff's depression, although he opined that "the probability of significant further improvement without

9

improvement of her medical condition is slim." (Tr. at 620-22.) None of the evaluating sources, or any sources of record, mention past episodes of decompensation, the possibility of future decompensation, or the need for a "highly supportive living arrangement" as required by Listing 12.04(C). In fact, Dr. Derrick found that Plaintiff "can take care of personal [activities of daily living] and occasionally [do] some light chores depending on how her level of pain is." (Tr. at 621.) Overall, the medical sources cited by Plaintiff show, at best, mild to moderate depression "somewhat improved" by medications and therapy. (See Tr. at 620.) Plaintiff thus fails to demonstrate that her depression met or equaled all of the specified medical criteria for Listing 12.04(C), and substantial evidence supports the Commissioner's step three determination to that effect.

    B.    Listing 1.01

Plaintiff's argument that her chronic pain syndrome and fibromyalgia meet or equal "Listing 1.01" similarly fails. First, as Defendant correctly notes, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.01 is not a listing at all, but rather "a descriptor for the category of listings that follows." (Def.'s Br. at 4.) The specific listings contained in the musculoskeletal category described in section 1.01 are as follows: Listing 1.02: Major dysfunction of a joint(s) (due to any cause); Listing 1.03: Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; Listing 1.04: Disorders of the spine; Listing 1.05: Amputation (due to any cause); Listing 1.06: Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones; Listing 1.07: Fracture of an upper extremity; and Listing 1.08: Soft tissue injury (e.g. burns). 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 1.02, 1.03, 1.04, 1.05, 1.06, 1.07, and 1.08.

Plaintiff never identifies which of these listings she claims to meet, but most may be easily eliminated, as Plaintiff never alleges that she suffered any fracture of an upper extremity (Listing 1.07), fracture of the femur, tibia, pelvis or tarsal bones (Listing 1.06), amputation (Listing 1.05), or severe spine disorder (Listing 1.04).[6] Further, while Plaintiff points to medical evidence of her widespread pain due to chronic pain syndrome, this condition fails to meet the definition of a soft tissue injury under Listing 1.08, since impairments of this type must require "continuing surgical management . . . directed toward the salvage or restoration of major function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.08; see also § 1.00(M) ("*Under continuing surgical management* . . . refers to surgical procedures and any other associated treatments related to the efforts directed to the salvage or restoration of functional use of the affected part."); § 1.00(N) ("Generally, when there has been no surgical or medical intervention for 6 months after the last definitive surgical procedure, . . . [e]valuation at this point must be made on the basis of the demonstrable residual limitations."). In this case, Plaintiff alleges no such continuing surgical intervention. Accordingly, the only remaining possibilities are Listings 1.02 and 1.03, which both involve joint impairment. However, Plaintiff fails to allege, let alone establish, the degree of impairment specified in either of these listings. Listings 1.02(A) and 1.03 both require an inability to ambulate effectively, which the regulations define as "an extreme limitation of the ability to walk . . . that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Part 404, Subpart P, Appendix

---

[6] Plaintiff does note that an MRI showed mild lumbar degenerative disc disease, but there is no evidence in the record of a spinal disorder of sufficient severity to meet Listing 1.04. Specifically, there is no evidence of nerve root compression or impingement, or of spinal arachnoiditis or spinal stenosis. In addition, as noted above, Plaintiff does not point to evidence of a spinal disorder as sufficient to meet the listings.

1 § 1.00(B)(2)(b)(1).[7] Here, in contrast, the medical records describe Plaintiff's gait as slightly to moderately antalgic, and note that she "was ultimately able to walk on her heels, toes, and tandem without difficulty" and "was able to take care of her personal activities of daily living." (Tr. at 19, 20.) Similarly, Plaintiff points to no evidence indicating that she meets Listing 1.02(B), which requires upper extremity impairment "resulting in [an] inability to perform fine and gross movements effectively." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02(B). "[E]xamples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(c). Again, Plaintiff neither alleges nor points to any evidence supporting such severe restrictions.

As the Commissioner acknowledges, Plaintiff's inability to establish that she met Listings 12.04(C) and 1.01 "does not undermine the serious physical limitations she demonstrates as a result of her chronic pain syndrome, fibromyalgia, and depression." (Def.'s Br. at 14.) In fact, these impairments created such severe restrictions that they became disabling on February 11, 2007. Plaintiff simply failed to demonstrate that her impairments met or equaled any of the listings at Step Three, and substantial evidence supports the ALJ's determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #9] be

---

[7] Listing 1.06, involving fracture of a lower extremity, also requires an inability to ambulate effectively.

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 10th day of February, 2014.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge